### UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| JOSHUA WRIGHT, as Next-of-Kin of J.W., a minor, now deceased, | ) ) ) | |
| Plaintiff, | ) ) | No. 23 C 4734 |
| v. | ) ) | Judge Sara L. Ellis |
| ANGELA SHUMATE, TANIA MILLER, LISA VARGAS, JULIE BERKTOLD, REGINA PIPES, TRACY THOMAS, and DEPARTMENT OF CHILD AND FAMILY SERVICES, | ) ) ) ) ) ) | |
| Defendants. | ) | |

### OPINION AND ORDER

Plaintiff Joshua Wright, as next of kin to J.W., a minor who is now deceased, sued the Illinois Department of Child and Family Services ("DCFS") and several of its employees, including Angela Shumate, Tania Miller, Lisa Vargas, and Julie Berktold ("Defendants"[1]), asserting that DCFS and Defendants caused J.W.'s death by failing to properly investigate allegations of abuse directed at J.W.'s mother and her boyfriend and failing to act once they learned of the abuse that J.W. experienced at home.[2] Wright claims that Defendants' failures violated 42 U.S.C. § 1983 and the Illinois Wrongful Death Act, 740 Ill. Comp. Stat. 180/1 *et*

---

[1] For clarity, the Court uses Defendants to refer only to Angela Shumate, Tania Miller, Lisa Vargas, and Julie Berktold.

[2] Wright filed his first amended complaint after Defendants filed their motion to dismiss. In his response brief, Wright relied on his original complaint to support his arguments. However, Wright's first amended complaint does not substantially differ from the original complaint. Accordingly, the Court considers the first amended complaint, the operative complaint in this action, in deciding Defendants' motion to dismiss. *See Scott v. Chuhak & Tecson, P.C.*, 725 F.3d 772, 782 (7th Cir. 2013) ("It is true that when a plaintiff files an amended complaint, the amended complaint supersedes the original complaint.")

*seq.*[3]  Defendants have moved to dismiss Wright's complaint pursuant to Federal Rule of Civil

Procedure 12(b)(6).[4]  Because Wright has not asserted sufficient facts to support the state-created

danger exception to the general rule that the Constitution does not hold state actors liable for

wrongs conducted by private actors, the Court dismisses his § 1983 claim without prejudice.

## BACKGROUND[5]

Wright's claims arise from the untimely death of minor J.W.  J.W. and his siblings lived

with their mother Regina Pipes and her boyfriend Tracy Thomas.  On September 3, 2021, J.W.'s

grandparents called DCFS's hotline with allegations that J.W. and his siblings witnessed physical

abuse occurring at Pipes' residence (the "September 2021 Hotline Call").  DCFS assigned two

Child Welfare Employees, Miller and Shumate, to investigate the allegations.  On the same day

DCFS received the call, Miller conducted a home visit at Pipes' residence.  Miller interviewed

the children, learning that Thomas lived with Pipes in her home, but she failed to complete the

interview because Pipes interrupted it.

Shumate also investigated the allegations from the September 2021 Hotline Call.  On

November 10, 2021, Shumate interviewed J.W. and his siblings at their school.  During the

interview, one of the children reported seeing physical abuse at Pipes' house.

---

[3] While Wright's suit names Regina Pipes and Tracy Thomas as Defendants as well, Pipes and Thomas do not join Defendants' motion to dismiss, nor have they filed their own motions to dismiss.  Wright does not assert his § 1983 claim against Pipe or Thomas, instead only bringing state claims against Pipes and Thomas for battery and assault under the Illinois Wrongful Death Act.

[4] Wright also sought damages from DCFS under *Monell v. Department of Social Services of the City of N.Y.*, 436 U.S. 658 (1978), for creating a culture that supported a "code of silence" among its employees who fail to properly follow up on cases where abuse had been indicated.  Wright has since agreed to withdraw his *Monell* claim, and so the Court dismisses DCFS from the case and does not further address the *Monell* claim.

[5] The Court takes the facts in the background section from Wright's first amended complaint and presumes them to be true for the purpose of resolving Defendants' motion to dismiss.  *See Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1019–20 (7th Cir. 2013).

A month later, Shumate issued her final report, and DCFS closed the investigation into the September 2021 Hotline Call. In her report, Shumate determined that domestic violence and abuse was "indicated." Doc. 23 ¶ 23. Before issuing the final report, Shumate informed her supervisors, Vargas and Berktold, of her findings. Following the issuance of the final report, Shumate did not refer the case to court or provide additional services. Pipes and Thomas learned that DCFS closed its investigation into the September 2021 Hotline Call after determining that abuse was "indicated."

On February 21, 2022, J.W. arrived unresponsive at the Advocate Condell Medical Center with bruising on both of his legs, his right buttock, his collarbone, his bilateral hips, and his left leg. A CAT scan revealed that J.W. suffered multiple brain bleeds. Advocate Condell Medical Center immediately transferred J.W. to Advocate Lutheran General Hospital to undergo emergency surgery to treat his brain bleeds. He died four days later.

J.W.'s autopsy revealed multiple subdural hemorrhages, Grade 2 kidney lacerations, a fracture of the eleventh right rib, and bruising, scarring, and scabbing all over his body. The autopsy concluded that J.W.'s death occurred because of multiple injuries from an assault. Consequently, on February 24, 2022, the police arrested Thomas and charged him with aggravated battery and first-degree murder of J.W.

Wright filed this suit in the Circuit Court of Lake County on April 27, 2023, and Defendants removed the case to federal court on July 21, 2023.

## LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, not its merits. Fed. R. Civ. P. 12(b)(6); *Gibson v. City of Chi.*, 910 F.2d 1510, 1520 (7th Cir. 1990). In considering a Rule 12(b)(6) motion, the Court accepts as true all well-pleaded facts in the

plaintiff's complaint and draws all reasonable inferences from those facts in the plaintiff's favor. *Kubiak v. City of Chi.*, 810 F.3d 476, 480–81 (7th Cir. 2016). To survive a Rule 12(b)(6) motion, the complaint must assert a facially plausible claim and provide fair notice to the defendant of the claim's basis. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Adams v. City of Indianapolis*, 742 F.3d 720, 728–29 (7th Cir. 2014). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

## ANALYSIS

### I.     Section 1983 Due Process Claim

Wright asserts a due process violation under § 1983, claiming that Defendants emboldened and encouraged J.W.'s abuse, which ultimately caused his death. Defendants move to dismiss Wright's § 1983 due process claim, arguing that Wright has not sufficiently alleged a due process claim and that qualified immunity protects them from the claim.

The Due Process Clause protects an individual's right to life, liberty, or property as against the State. U.S. Const. amend. XIV, § 1. The Due Process Clause does not, however, "impose an affirmative obligation on the State to ensure that those interests do not come to harm through other means," such as the actions by private actors. *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 195 (1989). Nor does the Due Process Clause provide "a guarantee of certain minimal levels of safety and security" to an individual. *Id.* The Seventh Circuit has recognized two exceptions to this strict rule: "(1) when the state has a 'special relationship' with the person such as 'when it has custody over a person, it must protect him because no alternate avenues of aid exist,' and (2) under the state-created danger exception,

4

'liability exists when the state affirmatively places a particular individual in a position of danger the individual would not otherwise have faced.'" *Doe v. Vill. of Arlington Heights*, 782 F.3d 911, 916 (7th Cir. 2015) (citations omitted). Wright does not argue that his claim falls within the custody exception, nor can he as he has not alleged that the State ever had custody of J.W. to support such an argument. *First Midwest Bank Guardian of Est. of LaPorta v. City of Chicago*, 988 F.3d 978, 988 (7th Cir. 2021) ("The special-relationship exception did not apply in *DeShaney* for the obvious reason that the injured child was not in state custody."). Wright instead argues that his claim falls within the state-created danger exception.

The state-created danger exception is narrow. *See Marsh v. Caruana*, No. 22 C 50023, 2022 WL 17038962, at *4 (N.D. Ill. Nov. 17, 2022) (collecting cases). To proceed under the state-created danger exception, Wright must allege facts supporting the following three elements: "(1) the government, by its affirmative acts, created or increased a danger to the plaintiff; (2) the government's failure to protect against the danger caused the plaintiff's injury; and (3) the conduct in question 'shocks the conscience.'" *Est. of Her v. Hoeppner*, 939 F.3d 872, 876 (7th Cir. 2019).[6]

Wright has not sufficiently alleged that the state-created danger exception applies here because his complaint lacks facts to support the first factor—that Defendants, through their affirmative acts, created or increased the harm to J.W. "When courts speak of the state's

---

[6] Defendants highlight the Seventh Circuit's opinion in *Weiland v. Loomis*, which questions whether the three-part state-created danger test can be properly inferred from *DeShaney*. 938 F.3d 917 (7th Cir. 2019). The Seventh Circuit in *Weiland* did not specifically overrule Seventh Circuit precedent that recognized the exception and application of that test, however. *Id.* at 921. And, in a decision issued just one week after *Weiland*, the Seventh Circuit again recognized the state-created danger exception and applied the three-part test. *See Est. of Her*, 939 F.3d at 876. Therefore, this Court recognizes the state-created danger exception and analyzes Wright's claim using the three-part test. *See Deneen v. Miebach*, No. 19-CV-2149, 2019 WL 9834333, at *5 (C.D. Ill. Dec. 30, 2019) (applying the three-part test from *Estate of Her* despite arguments that *Weiland* rejected the application of the exception).

5

'increasing' the danger of private violence, they mean the state did something that turned a potential danger into an actual one, rather than that it just stood by and did nothing to prevent private violence." *Sandage v. Bd. of Comm'rs*, 548 F.3d 595, 600 (7th Cir. 2008).  In other words, Wright must allege a "proactive creation or exacerbation of danger," not an "inert failure to protect." *Windle v. City of Marion*, 321 F.3d 658, 662 (7th Cir. 2003).  As the Seventh Circuit explained, "[t]o 'create or increase' must not be interpreted so broadly as to erase the essential distinction between endangering and failing to protect and thus circumvent *DeShaney*'s general rule." *Doe*, 782 F.3d at 917.  It is not enough to allege "knowledge, followed by inaction." *Fields v. Klegman*, No. 21-CV-2058, 2022 WL 971529, at *7 (N.D. Ill. Mar. 31, 2022), *appeal dismissed sub nom. Fields on behalf of Kelley v. Klegman*, No. 22-1706, 2022 WL 19833890 (7th Cir. Nov. 30, 2022).  Leaving someone in "no worse position" than if the State did not act also does not satisfy this element.  *Doe*, 782 F.3d at 918.

Wright argues he has sufficiently alleged that Defendants created or increased the danger to J.W. by asserting the following affirmative acts: first, that Defendants conducted interviews with J.W. and his siblings in front of his mother in violation of DCFS policy; second, that Defendants failed in their investigation of the September 2021 Hotline Call by conducting a "sham" investigation, falsifying information in their reports, and omitting information from their reports; and finally, that Defendants reported to Pipes and Thomas that DCFS concluded that abuse was "indicated" but that it had closed its investigation.  It is possible that conducting interviews of J.W. with Pipes present and closing the investigation after informing Pipes and Thomas that abuse was indicated, if adequately pleaded, may support a due process violation under the state-created danger exception.  *See, e.g., Lipman v. Budish*, 974 F.3d 726, 746 (6th Cir. 2020) (determining that child welfare employees interviewing a child about possible abuse

with her abusers present constitutes an affirmative action); *Kennedy v. City of Ridgefield*, 439 F.3d 1055, 1063 (9th Cir. 2006) (holding that a police officer informing a known violent person that his neighbor reported him for child abuse constituted an affirmative action). However, as discussed below, Wright has not adequately alleged any of these asserted affirmative actions, and therefore he has failed to sufficiently assert that the state-created danger exception applies here.

Wright's arguments regarding the interviews Defendants conducted of J.W. and his siblings are not consistent with the allegations in the first amended complaint. It is a "reasonable inference" that interviewing a child who is a potential victim of abuse about the source of their injuries with their accused abusers present "increase[es] [his] risk of further abuse." *Lipman*, 974 F.3d at 746. Yet, Wright does not allege that Defendants interviewed J.W. and his siblings about their possible abuse with Pipes or Thomas present. Wright describes the first interview, which occurred on September 3, 2021, as follows: "Defendant Miller conducted a home visit and partial interview with the children . . . but was interrupted by Regina Pipes and was unable to complete the interview." Doc. 23 ¶ 19. Stating that Pipes interrupted the interview and that, as a result, Miller did not complete it does not lead to the reasonable inference that Miller questioned J.W. about possible abuse with Pipes present. *See Lipman*, 974 F.3d at 746. As for the second interview in November 2021, Wright alleges Shumate conducted the interview with J.W. and his siblings at their school; nowhere in the complaint does Wright suggest that Pipes or Thomas attended that interview. *See id.* ¶ 21. Therefore, because Wright does not allege that Defendants conducted interviews of J.W. and his siblings with Pipes or Thomas present, the Court cannot consider such action in determining whether the state-created danger exception applies.

While Wright's allegations regarding Defendants' handling of the investigation—that Defendants conducted a "sham" investigation, falsified information in their reports, and omitted

information from their reports—constitute "affirmative actions," they do not qualify as well-pleaded facts. Instead, they are unactionable legal conclusions. A sham investigation without context explaining what about the investigation made it a sham is a conclusion, not a fact. *See, e.g.*, *Calderone v. City of Chicago*, No. 18 C 7866, 2019 WL 4450496, at *6 (N.D. Ill. Sept. 17, 2019) ("Moreover, Calderone's allegations of a 'predetermined, formal and sham pre-disciplinary,' are conclusory and therefore not entitled to a presumption of truth."), *aff'd*, 979 F.3d 1156 (7th Cir. 2020); *Cunliffe v. Wright*, 51 F. Supp. 3d 721, 738 (N.D. Ill. 2014) (dismissing plaintiff's procedural due process claim where she "makes conclusory allegations that it was a "sham hearing" but does not allege sufficient facts to support that she did not receive an adequate hearing."); *Alexander v. Wis. Dep't of Health & Fam. Servs.*, No. 99-C-0429-C, 2000 WL 34239243, at *10 (W.D. Wis. May 23, 2000) ("Plaintiff alleges that defendant Moritz discriminated against him because of his race and violated his rights under the due process clause, but plaintiff offers no evidence other than his conclusory statements that Moritz conducted a sham investigation of the incident because she was biased against him because of his race."), *aff'd*, 263 F.3d 673 (7th Cir. 2001). Similarly, claims of falsified reports and omitted facts, without allegations of what Defendants falsified or omitted from the reports, are conclusory. *See Belanger v. Wisconsin*, No. 18-C-00415, 2018 WL 4053394, at *2 (E.D. Wis. Aug. 24, 2018) (refusing to credit allegations of falsified reports or omitted information where the plaintiff did not "identify the facts that were supposedly concealed or identify the records that were supposedly falsified"). Wright only includes one factual allegation describing the investigation and its findings—that Shumate's report described the abuse as "indicated." Doc. 23 ¶ 23. Yet, Wright does not allege that this categorization was false, resulted from omitted relevant information, or otherwise was a "sham." In fact, Wright relies on the "indicated" label

8

to argue that Defendants knew abuse occurred in Pipes' and Thomas' home.   True, *Griffin v. Poynter*, No. 20-CV-1427-JES-JEH, 2021 WL 4495906, at *9 (C.D. Ill. Sept. 30, 2021), a case on which Wright relies, found that the same allegations that Defendants conducted a "sham" investigation, falsified information in their reports, and omitted information from their reports suffice to support a substantive due process claim.   But this Court respectfully disagrees with the conclusion in *Griffin* because "[m]ere conclusory statements," such as the ones here, "are insufficient to survive a motion to dismiss."   *Doe*, 782 F.3d at 915.

Finally, Wright's assertion that Pipes and Thomas learned that DCFS closed its investigation after concluding the abuse was "indicated," without more, does not suggest that Defendants created or increased likely harm to J.W.   To establish a state-created danger, Wright needs to allege that "the state affirmatively place[d] a particular individual in a position of danger the individual would not otherwise have faced."   *Buchanan-Moore v. Cnty. of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009) (citation omitted) (internal quotation marks omitted).   Here, Wright alleges an affirmative action by asserting that "Defendants . . . created and/or increased J.W.'s risk for abuse . . . [by] informing J.W's mother and Tracy Thomas the claims against them were indicated."   *See* Doc. 23 ¶ 12.   But Wright does not allege any facts that closing the investigation and informing Pipes and Thomas of the investigation's termination placed J.W. in more danger than if Defendants had never intervened.   *See Est. of Yepsen v. City of Crown Point*, No. 2:18-CV-207, 2018 WL 6579800, at *4 (N.D. Ind. Dec. 13, 2018) (dismissing a § 1983 due process claim because "[a]bsent a level of speculation that is not tolerable under federal pleading standards, there is nothing to suggest that Tanner was in less danger before the Defendants responded to his 911 call.").   Accordingly, this affirmative action cannot support Wright's § 1983 claim as Wright has currently alleged it.

9

Because the first amended complaint does not sufficiently suggest that Defendants created or increased danger to J.W., the Court cannot determine whether the state-created danger exception applies to allow Wright to proceed on his § 1983 claim.[7] Thus, the Court dismisses that claim without prejudice, allowing Wright the opportunity to amend his complaint to provide additional allegations that could support the exception's application to this case.

## II.    State Law Claims

With the dismissal of Wright's § 1983 claim and Wright's voluntary dismissal of his *Monell* claim, Wright only has his state law claims under the Illinois Wrongful Death Act remaining. Defendants argue state sovereign immunity requires dismissal of Wright's state law claims to the Illinois Court of Claims. Without any claims for which the Court has original jurisdiction, the Court declines to exercise supplemental jurisdiction over Wright's state law claims at this time. *See* 28 U.S.C. § 1367(c); *Groce v. Eli Lilly & Co.*, 193 F.3d 496, 501 (7th Cir. 1999) ("[I]t is the well-established law of this circuit that the usual practice is to dismiss without prejudice state supplemental claims whenever all federal claims have been dismissed prior to trial."). The Court therefore dismiss Wright's state law claims without prejudice and defers consideration of Defendants' arguments for dismissal of these claims until Wright adequately alleges a basis for the Court's subject matter jurisdiction.

---

[7] Defendants also argue that qualified immunity precludes Wright from proceeding on his § 1983 claim. "[B]ecause immunity may depend on particular facts that a plaintiff need not plead to state a claim," a motion to dismiss does not generally provide the best procedural setting to determine qualified immunity. *Hanson v. LeVan*, 967 F.3d 584, 589 (7th Cir. 2020). Here, because Wright has not sufficiently pleaded a constitutional violation but the Court finds it appropriate to grant him leave to replead, the Court defers consideration of Defendants' qualified immunity argument until he does so. *See id.* at 590 (qualified immunity applies if the "well-pleaded allegations, taken as true, do not state a claim of violation of clearly established law"). Defendants may reraise this argument if they chose to move to dismiss any further amended complaint that Wright files.

## CONCLUSION

For the foregoing reasons, the Court grants Defendants' motion to dismiss [21]. The Court dismisses Wright's federal claim without prejudice and grants Wright fourteen days to file a second amended complaint.

Dated: February 20, 2024

_____
SARA L. ELLIS
United States District Judge