UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JOSHUA WRIGHT, as Next-of-Kin of J.W., a minor, now deceased, ) ) ) Plaintiff, ) ) ) No. 23 C 4734 v. ) ) Judge Sara L. Ellis ) ANGELA SHUMATE, TANIA MILLER, ) LISA VARGAS, JULIE BERKTOLD, ) REGINA PIPES, and TRACY THOMAS, ) ) Defendants. ) | |

## OPINION AND ORDER

Plaintiff Joshua Wright, as next of kin to J.W., a minor who is now deceased, sued several employees of the Illinois Department of Child and Family Services ("DCFS"), including Angela Shumate, Tania Miller, Lisa Vargas, and Julie Berktold ("Defendants"), asserting that Defendants caused J.W.'s death by failing to properly investigate allegations of abuse directed at J.W.'s mother and her boyfriend and failing to act once they learned of the abuse that J.W. experienced at home. Wright alleges that Defendants' actions, or lack thereof, violated 42 U.S.C. § 1983 and the Illinois Wrongful Death Act, 740 Ill. Comp. Stat. 180/1 *et seq*. The Court previously dismissed Wright's federal claim for failing to allege sufficient facts to support the state-created danger exception to the general rule that the Constitution does not hold state actors liable for wrongs conducted by private actors. Wright has since amended his complaint, and Defendants now move to dismiss the second amended complaint with prejudice pursuant to Federal Rule of Civil Procedure 12(b)(6).[1] Because Wright again fails to allege facts sufficient

---

[1] Wright also names Regina Pipes, J.W.'s mother, and Tracy Thomas, Pipes' boyfriend, as defendants, bringing only state law claims against them for battery and assault under the Illinois Wrongful Death Act.

to support the state-created danger exception after receiving the opportunity to amend his pleadings, the Court grants Defendants' motion, dismisses Wright's federal claim with prejudice, and dismisses Wright's state claims without prejudice.

## BACKGROUND[2]

Wright's claims arise from the tragic death of minor J.W. At the time of his death, J.W. and his siblings lived with their mother Regina Pipes and her boyfriend Tracy Thomas. Thomas has a history of uncontrolled rage, violence, and threats of homicide.

On September 3, 2021, J.W.'s grandparents called DCFS' hotline with allegations that J.W. and his siblings witnessed physical abuse occurring at Pipes' residence, specifically that Thomas would beat Pipes, and that the children were afraid of Thomas (the "September 2021 Hotline Call"). DCFS assigned two Child Welfare Employees, Miller and Shumate, to investigate the allegations, with supervision provided by Vargas and Berktold.

On the same day DCFS received the call, Miller conducted a home visit at Pipes' residence. Miller did not review Thomas's criminal history or interview prior victims as part of her investigation. During the home visit, Miller interviewed Pipes and Thomas, who both admitted to a history of domestic violence. While Thomas and Pipes were nearby and watching carefully, Miller began to interview the children. However, Miller could not complete the interview because Pipes interrupted it and expressed that she was not comfortable with the children being interviewed by DCFS. Pipes' interruption prevented Miller from interviewing the children about domestic violence or abuse.

---

Pipes and Thomas have not moved to dismiss the claims against them, nor have they asked to join Defendants' motion.

[2] The Court takes the facts in the background section from Wright's second amended complaint and presumes them to be true for the purpose of resolving Defendants' motion to dismiss. *See Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1019–20 (7th Cir. 2013).

Between September 4, 2021 and November 9, 2021, neither Miller nor Shumate contacted or observed J.W. On November 10, 2021, Shumate interviewed J.W. and his siblings at their school. During the interview, one of the children reported that she was whipped on the bottom as a form of punishment, observed Thomas act violently in their home, and regularly called the police out of fear for their safety. Following her interview with the children, Shumate completed a Safety Assessment, in which she reported that there was no violent behavior in the home, no substance abuse, and no presence of domestic violence in the home.

On November 18, 2021, Shumate learned that the police had been called to Pipes' residence on a report of domestic violence. A few weeks later, Shumate issued her final report, and DCFS closed the investigation into the September 2021 Hotline Call. Before issuing the final report, Shumate informed her supervisors, Vargas and Berktold, of her findings. In her report, Shumate stated that domestic violence and abuse was "indicated." Doc. 36 ¶ 50. Following the issuance of the final report, Shumate did not refer the case to court or provide additional services. On December 2, 2021, Shumate told Pipes and Thomas that DCFS closed its investigation into the September 2021 Hotline Call after determining that abuse was "indicated." *Id.* ¶ 59.

On February 21, 2022, J.W. arrived unresponsive at the Advocate Condell Medical Center with bruising on both of his legs, his right buttock, his collarbone, his bilateral hips, and his left leg. A CAT scan revealed that J.W. suffered multiple brain bleeds. Advocate Condell Medical Center immediately transferred J.W. to Advocate Lutheran General Hospital to undergo emergency surgery to treat his brain bleeds. He died four days later.

J.W.'s autopsy revealed multiple subdural hemorrhages, Grade 2 kidney lacerations, a fracture of the eleventh right rib, and bruising, scarring, and scabbing all over his body. The

autopsy concluded that J.W.'s death occurred because of multiple injuries from an assault. Consequently, on February 24, 2022, the police arrested Thomas and charged him with aggravated battery and first-degree murder of J.W.

## LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, not its merits. Fed. R. Civ. P. 12(b)(6); *Gibson v. City of Chi.*, 910 F.2d 1510, 1520 (7th Cir. 1990). In considering a Rule 12(b)(6) motion, the Court accepts as true all well-pleaded facts in the plaintiff's complaint and draws all reasonable inferences from those facts in the plaintiff's favor. *Kubiak v. City of Chi.*, 810 F.3d 476, 480–81 (7th Cir. 2016). To survive a Rule 12(b)(6) motion, the complaint must assert a facially plausible claim and provide fair notice to the defendant of the claim's basis. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Adams v. City of Indianapolis*, 742 F.3d 720, 728–29 (7th Cir. 2014). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

## ANALYSIS

### I.  Section 1983 Due Process Claim

Wright reasserts a due process violation under § 1983, claiming that Defendants emboldened Pipes and Thomas and encouraged them to abuse J.W., which ultimately caused his death. Defendants once again move to dismiss this claim, arguing that Wright has not

4

sufficiently alleged a due process claim and, even if he did, qualified immunity protects them from the claim.

The Due Process Clause protects an individual's right to life, liberty, or property as against the State. U.S. Const. amend. XIV, § 1. As the Court previously recognized, the Due Process Clause does not "impose an affirmative obligation on the State to ensure that those interests do not come to harm through other means," such as the actions by private actors. *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 195 (1989). Nor does the Due Process Clause provide "a guarantee of certain minimal levels of safety and security" to an individual. *Id.* The Seventh Circuit has recognized two exceptions to this strict rule: "(1) when the state has a 'special relationship' with the person such as 'when it has custody over a person, it must protect him because no alternate avenues of aid exist,' and (2) under the state-created danger exception, 'liability exists when the state affirmatively places a particular individual in a position of danger the individual would not otherwise have faced.'" *Doe v. Vill. of Arlington Heights*, 782 F.3d 911, 916 (7th Cir. 2015) (citations omitted). Wright, once again, argues that his claim falls within the state-created danger exception.[3]

"The state-created danger exception is a narrow one." *Id.* at 917. To proceed under the state-created danger exception, Wright must allege facts supporting the following three elements: "(1) the government, by its affirmative acts, created or increased a danger to the plaintiff; (2) the government's failure to protect against the danger caused the plaintiff's injury; and (3) the

---

[3] As was true with his first amended complaint, Wright has not alleged that the State had custody of J.W., so the custody exception does not apply here. *First Midwest Bank Guardian of Est. of LaPorta v. City of Chicago*, 988 F.3d 978, 988 (7th Cir. 2021) ("The special-relationship exception did not apply in *DeShaney* for the obvious reason that the injured child was not in state custody.").

conduct in question 'shocks the conscience.'" *Est. of Her v. Hoeppner*, 939 F.3d 872, 876 (7th Cir. 2019).[4]

With respect to the first element, Wright must allege an affirmative act, in other words, "proactive creation or exacerbation of danger," not simply an "inert failure to protect." *Windle v. City of Marion*, 321 F.3d 658, 662 (7th Cir. 2003). This is because "[w]hen courts speak of the state's 'increasing' the danger of private violence, they mean the state did something that turned a potential danger into an actual one, rather than that it just stood by and did nothing to prevent private violence." *Sandage v. Bd. of Comm'rs*, 548 F.3d 595, 600 (7th Cir. 2008); *Doe*, 782 F.3d at 917 (summarizing the Seventh Circuit cases in which the state-created danger doctrine applied and noting that "[i]n each of these cases, the [state actor] encountered a potential danger and turned it into an actual one. And in each of these cases, the plaintiff was safe, or at least considerably safer, before the [state actor] acted than he or she was thereafter."). As the Seventh Circuit explained, "[t]o 'create or increase' must not be interpreted so broadly as to erase the essential distinction between endangering and failing to protect and thus circumvent *DeShaney*'s general rule." *Doe*, 782 F.3d at 917. It is not enough to allege "knowledge, followed by inaction." *Fields v. Klegman*, No. 21-CV-2058, 2022 WL 971529, at *7 (N.D. Ill. Mar. 31, 2022), *appeal dismissed sub nom. Fields on behalf of Kelley v. Klegman*, No. 22-1706, 2022 WL 19833890 (7th Cir. Nov. 30, 2022). Moreover, leaving someone in "no worse position" than if the State did not act also does not satisfy this element. *Doe*, 782 F.3d at 918; *see also Zimny v.*

---

[4] While the Seventh Circuit's opinion in *Weiland v. Loomis* questions whether the three-part state-created danger test can be properly inferred from *DeShaney*, it did not explicitly overrule its precedent that recognized the exception and application of that test. 938 F.3d 917, 921 (7th Cir. 2019). Additionally, subsequent Seventh Circuit authority has recognized the state-created danger exception and applied the three-part test. *See Est. of Her*, 939 F.3d at 876. Therefore, this Court continues to recognize the state-created danger exception and analyzes Wright's claim using the three-part test. *See Deneen v. Miebach*, No. 19-CV-2149, 2019 WL 9834333, at *5 (C.D. Ill. Dec. 30, 2019) (applying the three-part test from *Estate of Her* despite arguments that *Weiland* rejected the application of the exception).

*Geneva Cmty. Unit Sch. Dist. 304*, No. 22 C 4512, 2024 WL 707195, at *19 (N.D. Ill. Feb. 21, 2024) ("There is a difference between doing *nothing* and doing *harm.* Doing nothing cannot give rise to a claim, because inaction is not state action that deprives a person of life. But an affirmative act that makes the situation *worse* – by exposing the person to a new danger, or by placing the person in greater peril – potentially can give rise to a claim.").

In claiming that Defendants created or increased the harm to J.W., Wright alleges three affirmative acts, each of which he had previously asserted in his first amended complaint: first, that Defendants conducted interviews with J.W. and his siblings in front of Pipes and Thomas in violation of DCFS policy; second, that Defendants reported to Pipes and Thomas that DCFS concluded that abuse was "indicated" but that it had closed its investigation; and finally, that Defendants failed in their investigation of the September 2021 Hotline Call by conducting a "sham" investigation, falsifying information in their reports, and omitting information from their reports. As explained below, Wright's allegations again fail to meet the requirements for the state-created danger exception.

The Court first assesses Wright's allegations regarding Defendants' interviews of J.W. and his siblings. While it is a "reasonable inference" that interviewing a child who is a potential victim of abuse about the source of their injuries with their accused abusers present "increase[es] [his] risk of further abuse," *Lipman v. Budish*, 974 F.3d 726, 746 (6th Cir. 2020), Wright has not alleged that such an interview occurred. Wright asserts that Defendants interviewed J.W. and his siblings twice—first, by Miller at J.W.'s home on September 3, 2021, and second by Shumate at J.W.'s school on November 10, 2021. While Wright alleges that the September 3, 2021 interview between Miller and the children occurred with Pipes and Thomas in the same room, "[t]he interview was stopped quickly by Defendant Pipes who expressed she was uncomfortable

with the children being interviewed by DCFS" and so "[t]he children were unable to be interviewed about domestic violence or abuse." Doc. 36 ¶ 30. Because the complaint admits that Miller did not interview the children about domestic violence or abuse because Pipes intervened and stopped the interview, the Court cannot reasonably infer that Miller's interview increased the likelihood of abuse to the children. *Cf. Lipman*, 974 F.3d at 744 ("Specifically, they allege that caseworkers repeatedly interviewed Ta'Naejah about her abuse in the presence of Crump and Owens, acts that violated written DCFS policy and that Plaintiffs say the caseworkers knew would place Ta'Naejah at an increased risk of further abuse."); *id.* at 746 ("That interviewing Ta'Naejah in front of her alleged abusers and asking about the source of her injuries increased her risk of further abuse is just such a reasonable inference."). As for the November 10, 2021 interview, Wright does not allege that Pipes or Thomas were present when Shumate conducted the interview of J.W. and his siblings at their school. Therefore, because Wright does not allege that Defendants conducted interviews in which they asked J.W. and his siblings about their abuse with Pipes or Thomas present, Defendants' actions during these interviews do not qualify as affirmative acts for the purposes of the state-created danger exception.

Similarly, Wright failed to allege additional facts sufficient to suggest that Defendants informing Pipes and Thomas that DCFS closed its investigation after concluding the abuse was "indicated" created or increased likely harm to J.W. Wright states that "Defendant Shumate further informed the abusers that they had been found 'guilty' in DCFS terms – that the allegations of abuse against them were 'Indicated,'" Doc. 36 ¶ 57, and that Defendants subsequently closed the investigation without providing additional state services to the children despite knowing that abuse occurred. But as courts in this district recognize, "[w]hen someone is

8

already in danger, the state-created danger exception does not apply unless the [state actors] actively put the individual in greater danger." *White v. City of Alton*, No. 23 C 3007, 2024 WL 231446, at *3 (S.D. Ill. Jan. 22, 2024); *see also Windle*, 321 F.3d at 662 ("Even if one were to construe the conduct of the officers as some sort of affirmative action, we must then ask what new danger would have otherwise befallen the victim . . . We therefore have no assurance that the danger would not have existed in the absence of the so-called affirmative action of doing nothing."). Here, Wright fails to allege that J.W. faced a greater danger of abuse by Thomas and Pipes after Shumate informed them of the investigation's conclusion than he did before. *See Est. of Yepsen v. City of Crown Point*, No. 18 C 207, 2018 WL 6579800, at *4 (N.D. Ind. Dec. 13, 2018) (dismissing a § 1983 due process claim because "[a]bsent a level of speculation that is not tolerable under federal pleading standards, there is nothing to suggest that Tanner was in less danger before the Defendants responded to his 911 call"). Nor can the Court reasonably draw such an inference, even taking all facts in the light most favorable to Wright. *See Wilson-Trattner v. Campbell*, 863 F.3d 589, 594 (7th Cir. 2017) (finding that plaintiff's arguments that defendants' "dismissive and indifferent attitudes to each of the incidents [of abuse] endangered [the plaintiff] by progressively emboldening [her abuser]" were "foreclosed by *DeShaney*."); *Doe*, 782 F.3d at 919 (upholding dismissal of § 1983 claim where the plaintiff faced danger before the officer's involvement and the complaint "contains no allegation, for example, of any statement of encouragement by [the officer]"); *Windle*, 321 F.3d at 661–62 (finding the state-created danger exception not met where officers did nothing despite having enough information to conduct an investigation into a teacher's sexual assault of a student and intervene on the student's behalf because the danger to the plaintiff would have been the same or worse without the police's involvement). Accordingly, Wright has failed to assert that Defendants informing

9

Pipes and Thomas of the status of the DCFS' investigation created or increased harm to J.W. to support the state-created danger exception.

Finally, Wright alleges that Defendants conducted a "sham" investigation, falsified information in their reports, and omitted information from their reports. Unlike the first amended complaint where Wright relied solely on legal conclusions to support his false report allegations, *see* Doc. 34 at 8, Wright has now asserted facts that, taken in the light most favorable to him, suggest that Shumate falsified the Safety Assessment form. Wright alleges that Shumate falsely reported that there "was no violent behavior in the home . . . and no presence of domestic violence in the home," which contradicted what she learned in the November 10 interview—that the children had been whipped as a punishment, had witnessed Thomas act violently, and had called the police out of fear for their safety. *Cf. Belanger v. Wisconsin*, No. 18 C 415, 2018 WL 4053394, at *2 (E.D. Wis. Aug. 24, 2018) (refusing to credit allegations of falsified reports or omitted information where the plaintiff did not "identify the facts that were supposedly concealed or identify the records that were supposedly falsified"). These allegations sufficiently establish an affirmative act.

However, Wright's allegations that Shumate falsified her report still do not provide a basis for the application of the state-created danger exception because Wright fails to allege that the false report meets one of the other requirements of the state-created danger exception—that it caused J.W.'s harm. It is not enough for Wright to assert that Shumate acted affirmatively because "the failure on the part of the state to protect an individual from such a danger must be the proximate cause of the injury to the individual." *King ex rel. King v. E. St. Louis Sch. Dist. 189*, 496 F.3d 812, 818 (7th Cir. 2007). While the parties focus their causation arguments on whether too much time passed between the alleged falsified report and J.W.'s untimely death

10

such that it would be foreseeable, the Court identifies another issue with causation—Wright's allegation that a second report, which concluded that abuse was "indicated," followed Shumate's alleged falsified report. Even taking the allegations in the light most favorable to Wright, the intervening act of Shumate and her supervisors concluding that abuse was indicated breaks any causal chain that Shumate's allegedly false report may have had in causing J.W.'s death. *See Flint v. City of Belvidere*, 791 F.3d 764, 770–71 (7th Cir. 2015) (finding the state-created danger doctrine did not apply because "any theory linking the murder to Defendants' disclosure of Marty's informant status would depend on speculation and conjecture to fill the evidentiary void"). Without sufficient allegations suggesting that Shumate's false report caused J.W.'s death, Wright cannot take advantage of the state-created danger exception for this action. *See Buchanan-Moore v. Cnty. of Milwaukee*, 570 F.3d 824, 828 (7th Cir. 2009) (affirming dismissal of plaintiff's claim where plaintiff failed to allege the causation prong of the state-created danger exception).

Because Wright fails to allege facts needed for the state-created danger exception to apply, *Deshaney* bars his federal claim.[5] *See First Midwest Bank*, 988 F.3d at 989 ("Unless one of these limited exceptions applies, the state has no duty under the Due Process Clause to protect against private violence."). And because the Court provided Wright with the opportunity to cure his pleading deficiencies and he failed to do so, the Court dismisses his federal claim with prejudice. *See Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 734–35 (7th Cir. 2014)

---

[5] Defendants again assert that qualified immunity precludes Wright from proceeding on his § 1983 claim. Here, because Wright again failed to sufficiently plead a constitutional violation, the Court does not need to consider Defendants' qualified immunity arguments. *Hanson v. LeVan*, 967 F.3d 584, 590 (7th Cir. 2020) (qualified immunity applies if the "well-pleaded allegations, taken as true, do not state a claim of violation of clearly established law").

11

(affirming dismissal with prejudice of first amended complaint after initial complaint was dismissed without prejudice).

**II.      State Law Claims**

With the dismissal of Wright's § 1983 claim, Wright again only has his state law claims under the Illinois Wrongful Death Act remaining. Defendants reassert that state sovereign immunity requires dismissal of Wright's state law claims to the Illinois Court of Claims. The Court, however, need not address this argument. No claims remain over which the Court has original jurisdiction, and so the Court declines to exercise supplemental jurisdiction over the state law claims. *See* 28 U.S.C. § 1367(c); *Groce v. Eli Lilly & Co.*, 193 F.3d 496, 501 (7th Cir. 1999) ("[I]t is the well-established law of this circuit that the usual practice is to dismiss without prejudice state supplemental claims whenever all federal claims have been dismissed prior to trial."). The Court therefore dismisses Wright's state law claims without prejudice.

## CONCLUSION

For the foregoing reasons, the Court grants Defendants' motion to dismiss [39]. The Court dismisses with prejudice Wright's federal claim, dismisses without prejudice his state law claims, and terminates this case.

Dated: October 2, 2024

_____
SARA L. ELLIS
United States District Judge